UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SUAN D. KENDRICK,

            Plaintiff,

                                 Case No. 24-cv-199-pp

   v.

OAKBROOK CORPORATION,
REBECCA LINDLEY, HEATHER GERENSKY
and RESIDENT CHECK, LLC,

            Defendants.

---

**ORDER GRANTING OAKBROOK DEFENDANTS' MOTION TO DISMISS (DKT. NO. 10), DISMISSING DEFENDANT RESIDENT CHECK AND DISMISSING CASE**

---

The plaintiff, who is representing himself, has filed a complaint alleging that the defendants had denied him the ability to rent based on his race and other factors, in violation of the Fair Housing Act (FHA). Dkt. No. 1 at 3-4. Defendants Oakbrook Corporation, Rebecca Lindley and Heather Gerensky ("the Oakbrook defendants") have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiff's claims are time barred. Dkt. No. 10-11.

The court will grant the Oakbrook defendants' motion to dismiss. Dkt. No. 10. Although Resident Check, LLC has yet to appear (and does not appear to have been served), the claims against it similarly are time-barred. The court will dismiss Resident Check, LLC and the case in its entirety.

1

# I. Procedural Background

This case has a tangled procedural background.

### A. Filings in Case No. 20-cv-1884 (USPS, Employment Discrimination)

On December 21, 2020, the plaintiff filed a complaint against the U.S. Postal Service and its employees, alleging various forms of employment discrimination. Kendrick v. Brennan *et al.*, Case No. 20-cv-1884 (E.D. Wis.), Dkt. No. 1.

On May 4, 2021, the clerk's office received a letter from the plaintiff. Id. at Dkt. No. 6. The letter said that the plaintiff's "appeal through U.S. EEOC was denied on February 10, 2021." Id. He asserted that he was filing his lawsuit against the "U.S.P.S." in a timely fashion to bring his civil rights lawsuit. Id.

Several months later, on July 21, 2021, the court received from the plaintiff a document titled "Amended Complaint." Id. at Dkt. No. 7. That amended complaint named entirely different defendants and alleged entirely different claims; it alleged that Oakbrook Corporation, Resident Check and several individual defendants had violated the plaintiff's rights under the Fair Housing Act. Id. Along with the amended complaint, the clerk's office received a cover letter from the plaintiff, stating:

> Please find enclosed documentation and email to ALJ Gelhard who hasn't responded back at all to me for virtual hearing after I sent this documents to him. HUD investigator states the violation and I request that this court takes jurisdiction; due to the nature and LAJ Gelhard refuses to correspond back to me. Also, I haven't received transcript from July 16, 2020; hearing.

2

Id. at Dkt. No. 7-1. The plaintiff also attached several exhibits to the amended complaint, related to claims of housing discrimination, not the plaintiff's claims of employment discrimination by the postal service. Id. at Dkt. No. 7-2.

The court did not screen the amended complaint until November 17, 2023. Id. at Dkt. No. 9. The court began the screening order by explaining that Case No. 20-cv-1884 was the third case the plaintiff had filed in this district making allegations of discrimination against the U.S. Postal Service. Id. at 1. It explained that it had not yet screened the original complaint when it received the amended complaint, which named "a different set of defendants and allegations." Id. at 9. It recounted that the amended complaint named Oakbrook Corporation, Rebecca Lindley, Heather Gerensky and Resident Check, LLC as defendants and alleged that they had played a role in denying him rent. Id. at 2. The court recounted that "[t]he plaintiff alleges that the defendants denied his application for an apartment because he is 'an African American male with a criminal conviction that happened over 20 years ago.'" Id.

The court first concluded that the plaintiff did not have sufficient funds to prepay the filing fee. Id. at 2-3. The court then turned to the confusing procedural history—the fact that the plaintiff's original complaint had alleged employment discrimination against the postal service, but that his amended complaint alleged housing discrimination against entirely different defendants. Id. at 4-5. The court said that it didn't know "whether the plaintiff meant to change his claims from employment discrimination claims to housing

3

discrimination claims, or whether the amended complaint somehow was filed in this case accidentally." Id. at 5. But because the law states that an amended complaint supersedes an original complaint and renders it void, the court concluded that the amended complaint voided the original complaint; it explained that its order would screen only the allegations in the amended complaint. Id. at 5-6.

After discussing the Fair Housing Act and the plaintiff's allegation that the defendants denied his application for an apartment because of his race and his very old criminal conviction, the court explained that, "[a]lthough the complaint doesn't specify 'when' the plaintiff's application was denied, the documents attached to the complaint demonstrate that it was denied on or about February 4, 2019." Id. (citing Dkt. No. 1-2 at 4). The court determined that

> [b]ecause the plaintiff has identified the type of discrimination he allegedly suffered (racial), who committed the alleged discrimination (Oakbrook Corporation, Lindley, Gerensky and Resident Check, LLC) and *when the discrimination allegedly occurred (on or about February 4, 2019)*, at this early stage the court will allow him to proceed with his discrimination claim.

Id. at 8-9 (emphasis added). But the court clarified that "[n]othing in this order prohibits a defendant from contesting the plaintiff's claims or asserting defenses; the court has found only that the plaintiff has stated the bare minimum facts to allow the complaint to be served and to require the defendants to respond." Id. at 9 (emphasis added). After determining the plaintiff could proceed with his claims, the court ordered "the U.S. Marshals Service to serve a copy of the complaint and [the] order on the defendants

4

under Federal Rule of Civil Procedure 4." Id. On November 20, 2023, the U.S. Marshals Service mailed the amended complaint and service of process to all four defendants named in the amended complaint. Id. at Dkt. No. 12.

Ten days later, on November 30, 2023, the court received a letter from the plaintiff. Id. at Dkt. No. 11. The plaintiff advised the court that his housing discrimination case had been "inadvertently combined/amended" with the case he'd filed against the U.S. Postal Service. He stated that he'd been "instructed" to amend the postal service case "when their [sic] was a change of Post Master in which [he] filed the complaint; and re-added defendants." Id. He asked the court to separate the two cases and asked for further instruction. Id.

On January 2, 2024, before the court had responded to the plaintiff's letter, the Marshals Service filed a service process and return stating that it had received "no response" to the November 20, 2023 mailed process service. Id. at 12. Regarding Resident Check LLC specifically, the Marshals Service reported that it had received "no response as mail was returned not deliverable as addressed[.]" Id. at 4. On January 9, 2024, the court asked that the Marshals Service "attempt service in person." Id. at Dkt. No. 13. It is not clear whether the Marshals Service successfully served the defendants, but on February 6, 2024, the Oakbrook defendants appeared through counsel. Id. at Dkt. No. 15.

On February 6, 2024, Oakbrook Corporation and the two individual defendants named in the amended complaint filed a motion to dismiss and supporting brief. Id. at Dkt. Nos. 16, 17.

5

On February 13, 2024, the court issued an order construing the plaintiff's November 30, 2023 letter as a motion to sever the housing discrimination case from Case No. 20-cv-1884 (the employment discrimination case against the U.S. Postal Service). Id. at Dkt. No. 18. The court ordered the clerk's office to reinstate in Case No. 20-cv-1884 the defendants from the original employment discrimination case, to terminate the housing discrimination defendants and claims from the 2020 case and to open a new case for the housing discrimination claims and defendants. Id. at pages 7-8.

B.    Filings in Case No. 24-cv-199 (Oakbrook, Housing Discrimination)

On February 14, 2024, the clerk's office opened Kendrick v. Oakbrook Corp., et al., Case No. 24-cv-199—this case. In this case, the clerk's office docketed the plaintiff's motion to proceed without prepaying the filing fee (Dkt. No. 2), the "amended complaint" the plaintiff had filed on July 21, 2021 in the 2020 case (Dkt. No. 1),[1] this court's order screening the "amended complaint" (which, in the new case, became the original complaint) (Dkt. No. 3), and the request the plaintiff had filed in the 2020 case asking to proceed separately on his housing discrimination claim (Dkt. No. 5). The clerk's office also filed in the new, 2024 case the documents the plaintiff had attached to the "amended complaint" when he'd filed it in the 2020 case. Dkt. No. 1-2.

The consequence of this procedural history is that although this housing discrimination case has a 2024 case number and the complaint was filed in

---

[1] Throughout this order, the court will refer to the document the plaintiff titled "amended complaint" when he filed it in the 2020 case as the "operative complaint."

February 2024, the plaintiff filed the operative complaint (albeit in the 2020 case) in July 2021.

Also on February 14, 2024, defendants Oakbrook Corporation, Heather Gerensky and Rebecca Lindley re-filed their motion to dismiss in the 2024 case, dkt. no. 10, along with a brief in support, dkt. no. 11. In response to defense counsel's request, dkt. no. 13, the court set a briefing schedule for that motion, dkt. no. 14. The plaintiff timely filed opposition materials, dkt. nos. 14-15, and the movants filed a reply brief, dkt. no. 17. On March 11, 2024, the court received from the plaintiff a document titled "Grant Plaintiff Motion to Sue Oakbrook Corporation, Rebecca Lindley, and Heather Gerensky and Resident Check LLC and Dismiss Defendants Motion to Dismiss." Dkt. No. 20. The court also received from the plaintiff a brief in support of that document. Dkt. No. 21. A week later, the moving defendants filed another reply brief, addressing an issue the plaintiff had raised in his second filing. Dkt. No. 22.

The motion to dismiss the 2024 case has been fully briefed since mid-March 2024. To date, defendant Resident Check, LLC has not appeared in this case and the record still does not demonstrate that the Marshals Service successfully served Resident Check LLC.

## II.    **Factual Background**

The plaintiff filed the operative complaint on July 12, 2021, naming four defendants: Oakbrook Corporation, Rebecca Lindley, Heather Gerensky, and Resident Check LLC. Kendrick v. Brennan., Case No. 20-cv-1884, Dkt. No. 7 at

7

1; <u>Kendrick v. Oakbrook Corp.</u>, Case No. 24-cv-199, Dkt. No. 1 at 1. The

operative complaint alleges:

> OakBrook Corporation, Rebecca Lindley, Heather Gerensky, Resident Check, LLC, the named defendants all played a roll [sic] in denying rent, because I was an African American male with a criminal conviction that happened over 20 years ago; which violate the Fair Housing Act of 2016 (HUD) due to the disparate impact of the policy. I was denied renting at Beerline B 1710 N. Commerce St. Milwaukee, WI 53212. They did it because they've probably done this to people before. (Please see enclosed documentation).

> At a hearing they admitted to the violation with the DWD. I had lawful employment (USPS), no police contact since being released in society, no parole violation and completed parole! They took no [sic] of this into consideration.

<u>Id.</u> at 3-4. In the section titled "relief wanted," the plaintiff wrote:

> I want monetary compensation for the housing discrimination.
> Compensatory: $200,000,000.
> Economic: $200,000,000.
> Punitive: $200,000,000.
> Non-Economic: $200,000,000.
> I want the court's to fine Oakbrook Corporation, Resident Check LLC; Monitor there [sic] practice, due [sic] a full investigation in there [sic] "systemic practice" of discrimination to rent to African American.

<u>Id.</u> at 5.

To the operative complaint, the plaintiff attached several documents

related to his filing of a complaint with the Wisconsin Department of Workforce

Development Equal Rights Division. The documents include an April 11, 2019

letter (sent via email) to an equal rights officer at the Wisconsin Department of

Workforce Development from defendant Rebecca Lindley, director of property

management at defendant Oakbrook Corporation. Case No. 24-cv-199, Dkt. No.

1-2 at 5.[2] The letter advised the DWD that the respondents denied the plaintiff's allegations of discrimination based on race, age or criminal convictions, denied that the respondents had violated the Fair Housing Law, and explained:

> On or around January 17, 2019, [the plaintiff emailed the leasing agent (Jamie Gierczak) inquiring about a 50% 2-bedroom apartment. Ms. Gierczak responded to [the plaintiff] that there was a 60% 2-bedroom apartment available and although there was already an application from another potential tenant on that apartment, [the plaintiff] was welcome to apply for it in case the other application fell through. Ms. Gierczak provided [the plaintiff] with an application which he then completed and returned to her on January 25, 2019.
>
> Upon receipt of [the plaintiff's] application, Ms. Gierczak processed it through Oakbrook's third-party online screening company, Resident Check. Resident Check determined that [the plaintiff] passed the credit screening, however, he did <u>not</u> pass the background screening. Upon receiving the screening results from Resident Check, Ms. Gierczak informed [the plaintiff] that his application had been denied. Ms. Gierczak directed [the plaintiff] to contact Resident Check using the information provided on the adverse action letter to better understand why his application had been denied.
>
> Resident Check does not provide Oakbrook with the criminal charges or explanations as to why an applicant is denied. Resident Check simply provides us with its decision. If [the plaintiff] would like to dispute the information obtained by Resident Check, he may do so with them and reapply at the site. Please let me know if we can be of any further assistance.

Id.

The plaintiff also attached to the operative complaint a letter dated February 4, 2019 from Beerline B (identified in the signature block as "An OAKBROOK CORPORATION Managed Community"), which stated that the

---

[2] From here, the court will refer to the docket numbers in Case No. 24-cv-199.

plaintiff's application for residency had been "Denied" because of "Criminal – Felony Conviction(s) or Pending Case." Id. at 4. The letter stated that the date of the decision denying the plaintiff's application was February 4, 2019. Id.

The plaintiff attached to the operative complaint his Housing Discrimination Complaint, which he signed and dated May 5, 2021. Id. at 6-8. That document described the facts as follows:

> Complainant is African-American and applied to rent an apartment at 1710 N Commerce St. Milwaukee, WI 53212 – owned and managed by Oakbrook Corporation via Respondent Property Manager Rebecca Lindley. Complainant alleges he was denied, and when he contacted Resident Check, discovered it was because of his 1998 felony conviction. Complainant alleges he contacted Respondent Lindley to discuss the matter and she refuted the reasons given by Resident Check, insisting that it was not because of race, age, or criminal conviction. However, at a mediation conference held on July 16, 2020, after Complainant filed a complaint with the Department of Workforce Development, Respondent Heather Gerensky, Regional Manager, told the mediator that he was denied because his name was misspelled and his criminal history. Complainant alleges Respondent failed to consider the amount of time that has passed since his conviction. Complainant alleges Respondent's policy violates the Fair Housing Act and alleges discriminatory terms and conditions based on race, due to the disparate impact of the policy.

Id. at 7. The document listed the "most recent date on which the alleged discrimination occurred" as June 10, 2020. Id.

The plaintiff attached to the operative complaint a document that he signed, and appears to have prepared, titled "Hearing on the Issue of Probable Cause." Id. at 1. The document bears an Equal Rights Division case number (CR201900686); presumably the plaintiff prepared it for, and perhaps filed it with, the Equal Rights Division. The document states:

10

The Complainant [plaintiff], now brings before this Honorable Court that Oakbrook Corporation has violated the federal Fair Housing Act of 42 U.S.C., 312 Discriminatory refusal to rent and negotiate for rental 804a or f, 382 Discrimination in terms/conditions/privileges relating to rental 804 b of f, 430 Otherwise deny or make housing unavailable 804a, 440 Other discriminatory acts 804a or b, Wis. Stat. 106.50(1)(1m)(am)(b)(h)(2)(a).

The Complainant was denied rent application by Resident Check LLC which violates the Fair Housing Act based on his criminal conviction, Rebecca Lindley letter confirms that Resident Check denied my application for rent, at my mediation hearing Heather Gerbensky, Regional Manager admitted I was denied because of my conviction, misspelled name, my crime has to be 30 years old before they can rent to me, and it was there computer program who discriminated against me.

Rebecca Lindley Director of Property Management, Heather Gerbensky Regional Manager and Resident Check LLC; conspired together with this "systemic discrimination" to deny me rent, because I was a African American Male with a criminal conviction that happened over 20 years and I had lawful Income which still didn't matter to the Respondents.

The case print report by HUD assess analyst Carlton J. Cosby and housing discrimination complaint gives a brief statement of the facts regarding the allege violation. (See exhibits 1-7)

I respectfully request any and all documents from Resident check LLC and Oakbrook Corp who was denied rent or rented to with a criminal conviction, race, and sex.

A PDF copy has been emailed to the Respondents and Court on 5/22/2021.

Id.

Finally, the plaintiff attached to the operative complaint an email chain among the plaintiff, an administrative law judge and a representative of Oakbrook. Id. at 9-14. The emails show that the ALJ scheduled a pretrial conference via Webex for June 8, 2021, but that neither party appeared, so he

11

scheduled another pretrial for June 10, 2021. Id. at 13. They also show that the parties provided documents to the ALJ.

### III.    The Parties' Briefing

In their February 14, 2024 brief in support of their motion to dismiss, the Oakbrook defendants assert that "a claimant making a claim under the Federal Fair Housing Act must file a federal lawsuit within two years of the allegedly discriminatory action, and this statute of limitations is tolled while a claimant's complaint is pending with HUD." Dkt. No. 11 at 3 (citing 42 U.S.C. §3613(a)(1)(A)-(B)). They argue that the only discriminatory act alleged in the complaint—their denial of the plaintiff's rental application—occurred on February 4, 2019. Id. (citing Dkt. No. 7-2 at 4). The Oakbrook defendants calculate that the "[p]laintiff had until February 4, 2021, to file a federal court lawsuit against the Oakbrook Defendants[,] [h]owever, he failed to do so until July 12, 2021." Id. They contend that, "[a]lthough the statute of limitations is tolled when a claimant files a complaint with HUD, 42 U.S.C. §3613(a)(1)(B), the statute of limitations in this matter had already expired by the time Plaintiff filed his complaint with HUD on May 5, 2021." Id. at 4 (citing Dkt. No. 1-2 at 6-8). The Oakbrook defendants conclude that, "[b]ecause Plaintiff's Federal Fair Housing Act claim is untimely, it is impossible for Plaintiff's Amended Complaint to state a claim upon which relief can be granted." Id.

On February 26, 2024, the court received from the plaintiff a document titled "Grant Plaintiff Motion to Sue Oakbrook Corporation, Rebecca Lindley, and Heather Gerensky and Resident Check LLC and Dismiss Defendants

12

Motion to Dismiss." Dkt. No. 15. That document is dated February 16, 2024.

Id. The accompanying brief states:

> Now comes, the plaintiff, . . ., requesting that his case be granted and not dismissed with prejudice, because of the inadvertently filing and amending the wrong motion in this honorable court and not filing the right 42 U.S.C. 1983 in this court for housing discrimination. The record supports the violation by the defendants, who admitted this at a mediation hearing in 2019 Department of Workforce Department.

> STATEMENT OF FACTS

> The plaintiff . . . filed a complaint in 2019 with the Department of Workforce Department for housing discrimination against Resident Check LLC, Oakbrook Corporation and their employees. When the plaintiff contacted Resident Check, I discovered that I was denied renting from Oakbrook Corporation, because of my 1998 felony conviction and when I contacted defendant Lindley about this she refuted the reason given by Resident Check. On July 16, 2020, defendant Heather Gerensky, told the mediator that the plaintiff was denied because plaintiff name was misspelled and his criminal history, which violates the Fair Housing Act, civil rights, 5th Amendment and the 14th Amendment of the United States Constitution.

> On July 1, 2020, HUD Mr. Carlton J Cosby, started his investigation into my claims of housing discrimination by Resident Check and Oakbrook Corporation and Mr. Crosby investigation ended in May 04, 2021. Mr. Crosby investigation revealed that the plaintiff rights were violated in his Summary of Allegations.

> On July 12, 2021, plaintiff, filed an amended motion, which should've been an 42 U.S.C. 1983 Civil Rights complaint and request that the Court construe my motion as timely filed, because it was done within the time frame after HUD finish their investigation, and grant plaintiff a jury trial. Plaintiff, stated his claim and damages in his inadvertent amended motion that was filed in this court.

Dkt. No. 16 at 1-2. The plaintiff's brief concludes with a "request that the Court

grant Plaintiff motion to proceed in this court on his civil rights and

13

constitution violation by the Defendants and [] to dismiss Defendants motion."
Id.

On March 8, 2024, the Oakbrook defendants filed a reply brief. Dkt. No. 17. They reiterate that the "[p]laintiff has failed to establish that his lawsuit is timely." Id. at 1. The Oakbrook defendants state that, "[a]s the Court set forth in its Screening Order (Dkt. #3), the timeline alleged in Plaintiff's Amended Complaint is straightforward." Id. at 3. They recount that "Plaintiff's rental application was denied on February 4, 2019" and that "[t]here is no other discriminatory action alleged in the Amended Complaint." Id. (citing Dkt. No. 1; 1-2 at 4). The Oakbrook defendants again calculate that that plaintiff had until February 4, 2021 to either file a federal lawsuit or to file a complaint with HUD (in order to toll the statute of limitations), but that the plaintiff failed to act by that deadline. Id. They state that "Plaintiff appears to argue that he timely filed the Amended Complaint in this lawsuit because HUD began its investigation on July 1, 2020, and did not conclude its investigation until May 4, 2021." Id. (citing Dkt. No. 16 at 2). The Oakbrook defendants contend the plaintiff's "timeline is demonstrably inaccurate," providing the following explanation:

> Plaintiff attached several documents to his Amended Complaint. (See Dkt. #1-2). One of these documents is the HUD Complaint he filed, which is dated May 5, 2021. (Id. at 6-8). This May 5, 2021, document is the same HUD Complaint that was subsequently served on Oakbrook Corporation. (Declaration of April Trickel in Support of Defendants' Motion to Dismiss ("Trickel Decl.") ¶3, Ex. 1). The Oakbrook Defendants responded to Plaintiff's HUD Complaint on May 18, 2021. (Id. ¶4, Ex. 2). The Oakbrook Defendants subsequently received a letter from HUD on June 3, 2021, letting them know that Plaintiff's HUD Complaint was administratively closed because it was untimely. (Id. ¶4, Ex. 2). Based on the foregoing, it is apparent that the statute of limitations

set forth in 42 U.S.C. §3613(a)(1)(A) had already expired by the time Plaintiff filed the HUD Complaint on May 5, 2021.

Id. at 3-4. The Oakbrook defendants again argue that "[b]ecause Plaintiff's Federal Fair Housing Act claim is untimely, it is impossible for Plaintiff's Amended Complaint to state a claim upon which relief can be granted." Id. at 4.

On March 11, 2024—three days after the Oakbrook defendants filed their reply brief—the court received from the plaintiff another set of documents. One of those documents against is titled "Grant Plaintiff Motion to Sue Oakbrook Corporation, Rebecca Lindley, and Heather Gerensky and Resident Check LLC and Dismiss Defendants Motion to Dismiss." Dkt. No. 20. The content of this document is almost identical to the document the court received on February 26, 2024, but it is dated February 29, 2024. Id. The accompanying brief, dkt. no. 21, is also identical to the brief the court received from the plaintiff on February 29, 2024 (Dkt. No. 16). The difference between the plaintiff's February 26, 2024 filing and the March 11, 2024 filing is that he attached to the March 11, 2024 filing a document titled "Supportive Laws for Disparate Impact" (which the plaintiff also had attached to the operative complaint, see Dkt. No. 1-2 at 3) and a document titled "Case Print Report" (which the plaintiff previously had not filed). See Dkt. No. 20-1 at 1. The plaintiff provides no context for or explanation of the source of the "Case Print Report;" it appears to be a summary of the plaintiff's contact with the Department of Housing and Urban Development. It lists the plaintiff's "initial contact date" as July 1, 2020, the method of contact as "Internet, the "Origin" as HUD and the "assess

15

analyst" as "Cosby, Carlton Jermaine." <u>Id.</u> This document contains a section titled "summary of allegations," which is identical to the allegations in the plaintiff's May 5, 2021 Housing Discrimination Complaint. <u>Id.</u> (Compare with Dkt. No. 1-2 at 7). This documents also states "Last Time Updated: May 03, 2021[.]" <u>Id.</u>

On March 19, 2024, the Oakbrook defendants filed a "supplemental reply brief in support of motion to dismiss[,]" which "only addresses the new 'Case Print Report' exhibit, as the Oakbrook Defendants have already replied to all other arguments raised in Plaintiff's First and Second Motions." Dkt. No. 22 at 1-2. The Oakbrook defendants argue that "[t]he Court should disregard the 'Case Print Report' because it was not timely filed." <u>Id.</u> at 2. They recount that "[o]n February 23, 2024, the Court entered a text order that set forth the briefing schedule for the Oakbrook Defendants' Motion to Dismiss" and that "Plaintiff had until March 5, 2024, to respond[.]" <u>Id.</u> They emphasize that "Plaintiff's Second Motion, which includes the 'Case Print Report,' was not mailed to the Court until March 7, 2024, (Dkt. #20-3), and it was not electronically filed with the Court until March 11, 2024. (See Dkt. #20-1)." <u>Id.</u> The Oakbrook defendants summarize that, "[b]ecause the 'Case Print Report' was not timely filed, it should be disregarded on this basis alone." <u>Id.</u>

The Oakbrook defendants go on to argue that, "[e]ven if the Court were to consider the 'Case Print Report,' Plaintiff's Amended Complaint is still time barred." <u>Id.</u> They observe that "Plaintiff had two years after the occurrence to file a federal court lawsuit against the Oakbrook Defendants, excluding time

16

where '**an administrative proceeding under [42 U.S.C. Subchapter I] was pending** with respect to a complaint or charge under [42 U.S.C. Subchapter I] based upon such discriminatory housing practice.'" Id. (emphasis in original) (quoting 42 U.S.C. §3613(a)(1)(A)-(B)). The Oakbrook defendants assert that "even if the 'Case Print Report' accurately reflects Plaintiff's initial contact date with HUD, contacting HUD does not equate to filing a complaint that commences an administrative proceeding under 42 U.S.C. Subchapter I." Id. at 3. The Oakbrook defendants argue that "there is no HUD complaint number listed on the 'Case Print Report,' indicating that one was not filed at that time." Id. They reiterate that "[o]nly filing such a complaint tolls the statute of limitations, and Plaintiff did not file a complaint with HUD until May 5, 2021— after the two-year statute of limitations had already expired." Id. (citing Dkt. No. 1-2 at 6-8). The Oakbrook defendants argue that "[t]here was no statute of limitations that could have been tolled when Plaintiff filed the HUD Complaint on May 5, 2021, because his claim was already time barred on the date of the filing." Id. "Indeed," the Oakbrook defendants continue, "on June 3, 2021, Oakbrook Corporation received a letter from HUD confirming Plaintiff's HUD Complaint was administratively closed because it was untimely." Id. (citing Dkt. No. 18-3). For these reasons, the Oakbrook defendants argue that— whether the court considers the "Case Print Report" or not—the plaintiff's claims should be dismissed since they are not timely. Id. at 3-4.

## IV. Legal Standard

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, "it is also well established that pro se litigants are not excused from compliance with procedural rules." Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008). Similarly, "being a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders." Downs v. Westphal, 78 F.3d 1252, 1257 (7th Cir. 1996).

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)).

A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and draw[s]

18

reasonable inferences in the plaintiffs' favor." Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. When considering whether a plaintiff has stated a claim, the court "may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims." Doe v. Columbia Coll. Chi., 933 F.3d 849, 854 (7th Cir. 2019).

"The application of a statute of limitations is an affirmative defense." Lewis v. Stenz, 637 F. App'x 943, 944 (7th Cir. 2016). Because complaints "typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009) (quoting U.S. v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005)). In other words, "[i]t is appropriate to consider the statute of limitations at this stage if the 'relevant dates are set forth unambiguously in the complaint,' and if the plaintiff effectively 'pleads himself out of court' by providing enough facts in his pleading to establish a timing defect in his complaint." Thomas v. Burlingame, Case No. 10-C-1073-WG, 2011 WL 3847080, at *1 (E.D. Wis. Aug. 26, 2011) (quoting Brooks, 578 F.3d at 579; Cancer Found. v. Cerberus Cap. Mgmt., 559 F.3d 671, 674–75 (7th Cir. 2009)). When a court is faced with a Rule 12(b)(6) motion to dismiss a complaint as time-barred, "the question is only whether there is *any* set of facts that if

proven would establish a defense to the statute of limitations." <u>Clark v. City of Braidwood</u>, 318 F.3d 764, 768 (7th Cir. 2003) (emphasis in original).

**V.    Discussion**

   A.    <u>The Oakbrook Defendants</u>

The Oakbrook defendants are correct that, absent a basis for this court to toll the applicable statute of limitations, the plaintiff had until February 4, 2021 by which to file his FHA claim with this court. <u>See</u> 42 U.S.C. §3613(a)(1)(A)-(B). The FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court *not later than 2 years* after the occurrence or the termination of an alleged discriminatory housing practice[.]" 42 U.S.C. §3613(a)(1)(A) (emphasis added). As the court recounted in its screening order, the plaintiff's complaint "alleges that the defendants denied his application for an apartment because he is 'an African American male with a criminal conviction that happened over 20 years ago.'" Dkt. No. 3 at 8 (quoting Dkt. No. 1 at 3). The screening order also observed that "the documents attached to the complaint demonstrate that [the plaintiff's application] was denied on or about February 4, 2019." <u>Id.</u> (citing Dkt. No. 1-2 at 4). Because the only alleged discriminatory housing practice (the denial of the plaintiff's apartment application) occurred on February 4, 2019, the two-year limitation period for the plaintiff's FHA claims would have expired on February 4, 2021. The FHA claim, which the plaintiff filed on July 12, 2021, <u>see</u> Case No. 20-cv-1884 at Dkt. No. 1—is time-barred unless there is a basis for the court to toll the applicable statute of limitations.

The fact that the plaintiff attached the "Case Print Report" to his second "Grant Plaintiff Motion to Sue" document implies that the plaintiff's first contact with HUD should have tolled the limitation period. As the court has explained, that document shows that the plaintiff's first contact with HUD, via the Internet, took place on July 1, 2020—within the two-year limitation period. But the "Case Print Report" does not support tolling the limitation period for several reasons.

The court's local rules governing motion practice allow for a motion, an opposition brief and a reply brief in support of the motion. Civil Local Rule 7 (E.D. Wis.). They do not allow the non-moving party to file another document after the movant has filed the reply. The plaintiff did not ask the court's permission to file a second "Grant Plaintiff's Motion to Sue" document (to which he attached the "Case Print Report"). <u>See</u> Civil L.R. 7(i) ("Any paper, including any motion, memorandum, or brief, not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order must be filed as an attachment to a motion requesting leave to file it."). The court could, as the defendants suggest, refuse to consider the report because the plaintiff did not follow the court's local rules when he filed it.

Instead, the court has considered the report. Although the report appears to show that the plaintiff's first contact with HUD was in July 2020, the Oakbrook defendants are correct that the date of first contact is not the relevant date under the statute.

21

The FHA states, "[t]he computation of [the] 2-year period shall not include any time during which *an administrative proceeding* under this subchapter *was pending with respect to a complaint or charge* under this subchapter based upon such discriminatory housing practice." 42 U.S.C. §3613(a)(1)(B) (emphasis added). As to what action starts an administrative proceeding, the FHA provides that "[a]n aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated, *file a complaint* with the Secretary alleging such discriminatory housing practice." 42 U.S.C. §3610(a)(1)(A)(i) (emphasis added); see also Radivojevic v. Granville Terrace Mut. Ownership Tr., Case No. 00 C 3090, 2000 WL 1433999, at *3 (N.D. Ill. Sept. 27, 2000) ("An administrative proceeding under the Fair Housing Act may result from a plaintiff filing a complaint with a U.S. Housing and Urban Development ('HUD') office, or from a plaintiff filing with a state or local 'certified' agency that has entered into a written agreement with HUD permitting dual-filing." (citing 42 U.S.C. §§3610(f), 3616).

The documents the plaintiff attached to the complaint show that although the alleged discriminatory housing practice occurred on February 4, 2019, dkt. no. 3 at 8 (citing Dkt. No. 1-2 at 4), the "Housing Discrimination Complaint" that the plaintiff eventually filed with HUD is dated May 5, 2021, dkt. no. 1-2 at 6-8. The plaintiff did not sign or file this "Housing Discrimination Complaint" within the one-year period prescribed by the statute for initiating an administrative proceeding, or even within the two-year period prescribed by the statute for initiating a court case. See 42 U.S.C.

22

§§3610(a)(1)(A)(i), 3613(a)(1)(A). The "Housing Discrimination Complaint" does not support tolling the statute of limitations.

Finally, the "Case Print Report"—construed in the plaintiff's favor—shows only that the plaintiff made "initial contact" with HUD on "July 1, 2020[.]" Dkt. No. 20-1 at 1. It does not show that he filed a *complaint* with HUD on July 1, 2020. Even if the plaintiff *had* filed a complaint with HUD on July 1, 2020 (and this document does not show that he did), he still would have filed outside the one-year period to initiate an administrative proceeding. See 42 U.S.C. §3610(a)(1)(A)(i).

Perhaps realizing that his FHA claim is time-barred, the plaintiff made a new argument in his "Grant Plaintiff Motion to Sue" responses in opposition to the Oakbrook defendants' motion to dismiss. For the first time in the three and a half years since he filed the "amended complaint" in Case No. 20-cv-1184, the plaintiff argues that he inadvertently filed and amended the "wrong motion" and did not file "the right 42 U.S.C. 1983." Dkt. Nos. 16 at 1, 21 at 1. He now claims that his July 2021 amended complaint (which he calls an "amended motion) "should've been an 42 U.S.C. 1983 Civil Rights complaint . . . ." Dkt. Nos. 16 at 2, 21 at 2. There are two problems with this argument. The first is that the plaintiff did *not* assert a 42 U.S.C. §1983 claim in his July 2021 "amended" complaint. If that were the only problem, however, the court could allow the plaintiff to amend the complaint. The Seventh Circuit has advised district courts that not only must they view a self-represented plaintiff's complaint "with an understanding eye," but they must "allow ample

23

opportunity for amending the complaint when it appears that by doing so the pro se litigant would be able to state a meritorious claim." <u>Donald v. Cook Cnty. Sheriff's Dep't</u>, 95 F.3d 548, 555 (7th Cir. 1996) (citations omitted).

But that is not the only problem. The second, and insurmountable, problem with the plaintiff's eleventh-hour assertion that he meant to file a civil rights claim under 42 U.S.C. §1983 is the fact that §1983 prohibits civil rights violations only by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ." In other words, a plaintiff may sue someone under §1983 only if that person is a government official or employee, or acting jointly with a government entity. That is because constitutional protections like the Fourteenth Amendment "protect citizens from conduct by the government, but not from private actors, no matter how egregious that conduct might be." <u>Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7</u>, 570 F.3d 811, 815 (7th Cir. 2009) (citations omitted).

Oakbrook Corporation is a private business corporation. https://apps.dfi.wi.gov/apps/corpSearch/Details.aspx?entityID=O015418&hash=556535170&searchFunctionID=21b22404-0cae-45d9-ae94-215facd9fe9f&type=Simple&q=oakbrook+corporation. The two individual defendants are employees of that private business corporation. Resident Check appears to be a software solution owned by MRI Software, LLC, another private corporation. https://www.mrisoftware.com; https://businesssearch.ohiosos.gov/#BusinessNameDiv. These private entities are not subject to liability under 42 U.S.C. §1983.

24

Because the only alleged discriminatory housing practice occurred on February 4, 2019 and there is no basis to toll the two-year period for the plaintiff to file his FHA claim, the plaintiff needed to file this FHA case by February 4, 2021. Because the plaintiff filed his complaint on July 12, 2021, his FHA claims are barred by the applicable statute of limitations. And he cannot sue the defendants under §1983 because they are not state actors. The court must grant the Oakbrook defendants' motion and dismiss them under Rule 12(b)(6).

B.    Resident Check, LLC

As the court has explained, the entity Resident Check, LLC has not appeared.

The operative complaint listed all the defendants, then provided an address of 5005 LBJ Freeway, Suite 225, Dallas, TX 75244. Dkt. No. 1 at 2. As the court explained above, Resident Check does not appear to be a corporation, but a software solution owned by MRI Software, LLC. It appears that the plaintiff sued the wrong entity.

MRI Software's website shows that in 2017, it opened an office at 5005 Lyndon B. Johnson Freeway, Suite 225, Dallas, Texas 75244.   https://www. mrisoftware.com/blog/mri-software-expands-dallas/. But MRI Software, LLC appears to be an Ohio corporation. https://www.mrisoftware.com; https:// businesssearch.ohiosos.gov/#BusinessNameDiv. The Texas office is just that— an office of an corporation headquartered and incorporated in another state. And that corporation is not called "Resident Check, LLC." That is why the

25

Marshals Service was not able to serve an entity called "Resident Check, LLC." There is no "Resident Check, LLC" at the Texas address the plaintiff provided, and the Texas address he provided is the address at which the Marshals attempted to serve that entity.

"District judges have ample authority to dismiss frivolous or transparently defective suits *spontaneously*, and thus save everyone time and legal expense." Hoskins v. Poelstra, 320 F.3d 761, 763 (7th Cir. 2003) (emphasis added). Section 1915(e)(2)(B) of Title 28, which governs cases in which a court allows a plaintiff to proceed without pre-paying the filing fee, states that, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case *at any time* if the court determines that— . . . the action or appeal— . . . *fails to state a claim on which relief may be granted*[.]" 28 USC §1915(e)(2)(B)(ii) (emphasis added).

The court will exercise its discretion to dismiss defendant Resident Check, LLC. First, Resident Check, LLC does not appear to exist as a corporate entity; it is a software program owned by MRI Software, LLC. Second, the court has concluded that the operative complaint fails to state a claim against any defendant upon which relief may be granted—including, if the plaintiff had named the proper defendant, MRI Software, LLC or its software program— because the plaintiff's Fair Housing Act claim is time-barred. The court will dismiss Resident Check, LLC.

## VI.    Conclusion

The court **GRANTS** the Oakbrook defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 10.

The court **DISMISSES** defendant Resident Check, LLC.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 31st day of December, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

27